# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT G. MARTINELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11 C 8707 |
| ) | |
| NAVISTAR INTERNATIONAL CORP., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Robert Martinell has sued Navistar International Corp. (Navistar), the parent of his former employer Navistar, Inc., for breach of contract and unjust enrichment. Navistar has moved to dismiss for failure to state a claim. For the reasons stated below, the Court grants Navistar's motion.

## Facts

The Court takes the following recitation of the facts from Martinell's amended complaint.

Navistar, Inc. employed Martinell as an attorney from June 1983 until June 2004. In December 1997, Martinell and Navistar entered into an employment contract (Contract), including an Incentive Stock Option Agreement Supplement (the Supplemental Option Contract). The Supplemental Option Contract provided that in exchange for one year of employment, Martinell would have the option to purchase 2,131 shares of Navistar stock at the price of $23.3125 per share over a ten year period

expiring on December 16, 2007. Martinell alleges that the Supplemental Option Contract required Navistar to keep available sufficient shares of common stock to satisfy the agreement's terms and to comply with applicable securities laws and regulations so that it could issue marketable stock.

Prior to December 2007, Navistar announced that it was no longer in compliance with certain financial reporting requirements of the Securities and Exchange Commission. As a result, the New York Stock Exchange delisted Navistar's stock, preventing it from being traded on the exchange. As a result, the stock traded only in the "over the counter" market.

On December 10, 2007, Martinell delivered a notice to Navistar along with $49,678.94, stating that he was exercising his option to the purchase of the 2,131 shares referred to in the Supplemental Option Contract. The market price of the stock on that date was approximately $54.65 per share. Martinell's notice stated that if Navistar was unable to issue marketable stock, he wanted the cash value instead. Navistar declined to issue marketable stock to Martinell or to pay him the cash value of the stock and instead, issued him 2,131 shares of restricted stock, which could not be traded on the open market.

In May 2008, Navistar became current with its financial reporting, and Navistar stock resumed public trading. Shortly thereafter, Martinell exercised all of his other Navistar stock options. He sold those shares shortly thereafter for an average of $76 per share.

Martinell alleges that on various occasions, he asked Navistar to remove the restriction from the 2,131 shares so he could sell them. He contends that on various

2

occasions, Navistar indicated that it would remove the restriction from the 2,131 shares one year after the exercise of the option on December 10, 2007. Despite this, however, Navisar did not do so.

Finally, on March 31, 2009, 2,131 shares of unrestricted Navistar stock were transferred into Martinell's brokerage account. In May 2009, Martinell sold these shares at a price of $38.0022 per share.

### Martinell's claims

In Count 1 of his amended complaint, Martinell alleges that Navistar breached its written contract with him by failing to comply with securities law requirements and issuing him unmarketable stock. In Count 2, he alleges that Navistar breached an oral agreement to remove the restrictions from the stock once it returned to compliance with financial reporting requirements and could issue unrestricted stock. He contends that he was injured by these breaches in that he was unable to sell the 2,131 shares for a higher price. In Count 3, a claim of unjust enrichment, Martinell contends that Navistar was unjustly enriched by receiving and retaining the amount he paid in December 2007 to exercise the stock options.

Navistar has moved to dismiss all of Martinell's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Navistar contends that Counts 1 and 2 are time-barred and that Martinell cannot assert an unjust enrichment claim because there is a contract that governs his dealings with Navistar concerning the stock options.In deciding a motion to dismiss for failure to state a claim, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in the plaintiff's favor. *E.g., Parish v. City of Elkhart*, 614 F. 3d 677, 679 (7th Cir. 2010). The plaintiff's allegations "must be enough

3

to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Rather than simply stating facts that suggest a claim to relief is possible, plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

As indicated earlier, Navistar's motion to dismiss is based in part on its contention that the Martinell's claims are time-barred. Although the statute of limitations is an affirmative defense, it may be asserted by way of a motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (internal quotation marks omitted). Put differently, if the facts set forth in the complaint establish that the claim is time-barred, the claim is appropriately dismissed on a Rule 12(b)(6) motion. *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011).

**1.     Counts 1 and 2**

    **a.     The Plan's choice of law and limitations terms**

Navistar argues that the terms of Supplemental Option Contract were governed by the Navistar 1994 Performance Incentive Plan (Plan), which included a three-year limitations clause, and a choice of law clause specifying that it would be governed by Delaware law . Martinell contends that the terms of the Plan are not appropriately considered in connection with Navistar's motion, because the Plan is not part of Martinell's complaint, it is inconsistent with the purpose of the Supplemental Option Contract, it had previously expired, and it is not "central to [Martinell's] claim." Pl's Reply Mem. at 4, 7, 8.

4

The Court is unpersuaded. A document attached to a defendant's motion to dismiss is considered part of the pleadings and thus may be considered in deciding the motion if it is referenced in the complaint and is central to plaintiff's claim. *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). The primary rationale is that a plaintiff could otherwise avoid dismissal simply by failing to include documents that prove his claims lack merit. *Tierney*, 304 F.3d at 738. In this case, the Supplemental Option Contract, which Martinell attached to his complaint and which is thus part of the complaint for present purposes, *see* Fed. R. Civ. P. 10(c), refers to the Plan several times. Thus the Plan is effectively referenced in the complaint. Further, the terms of the contract in dispute are central to the claims. For the foregoing reasons, it is appropriate to consider the Plan in addressing Navistar's motion to dismiss.

Under both Illinois and Delaware law, the first step in interpreting a written contract is to consider its language. *Reserve at Woodstock, LLC v. City of Woodstock*, ___ Ill. App. 3d ___, 958 N.E.2d 1100, 1111 (2011); *Mehiel v. Solo Cup Co.*, No. Civ.A. 1596-N, 2005 WL 3074723, at *2 (Del. Ch. Nov. 3, 2005). The language of the agreement is read as a whole, in accordance with its plain andordinary meaning, to ascertain the reasonable expectations of the parties. *Village of Arlington Heights v. Anderson*, ___ Ill. App. 3d ___, 963 N.E.2d 949, 956 (2011); *Great-West Investors, LP v. Lee*, No. 5508-VCN, 2011 WL 284992, at *6 (Del. Ch. Jan. 14, 2011).

The Supplemental Option Contract provides that "[t]his Agreement shall be subject to and governed by the terms of the Plan" and indicates that Martinell was

5

provided a copy of the Plan along with the Supplemental Option Contract. Am. Compl., Ex. A ¶ 12. Thus it is clear from the terms of the Supplemental Option Contract that it is governed by the terms of the Plan. The Court rejects Martinell's contention that the Plan had expired before he exercised the option at issue and thus cannot possibly govern his claims in this case. The document that Martinell cites to support this contention – Exhibit B to his amended complaint – undercuts his argument when considered in its entirety. Exhibit B states that although there was a new Plan in effect, "[a]ny awards previously granted under the Prior Plans continue to vest and/or are exercisable in accordance with their original terms and conditions." Am. Compl., Ex. B at 128.

For these reasons, the Court concludes that the terms of the Plan govern Martinell's claims under the Supplemental Option Contract.

### b. Enforceability of the Plan's provisions

Martinell contends that the choice of law and limitations terms upon which Navistar relies are unenforceable because they are part of a contract of adhesion. The Court assumes for purposes of discussion that Martinell can prove that the relevant agreement constituted a contract of adhesion. A contract of adhesion is a contract submitted by one party to another on a take-it-or-leave-it basis, without any opportunity to negotiate its terms. *Larned v. First Chi. Corp.*, 264 Ill. App. 3d 697, 698, 636 N.E.2d 1004, 1006 (1994).

The Court will consider the enforceability of the choice-of-law clause and the statute of limitations clause under both Illinois and Delaware law. The result is the same under both states' law.

In both Illinois and Delaware, contracts of adhesion are not *per se* unenforceable, but terms within such contracts may be deemed unconscionable and thus unenforceable. *Graham v. State Farm Mut. Life Ins. Co.*, 565 A.2d 908, 912 (Del. 1989); *All Am. Roofing, Inc. v. Zurich Am. Ins. Co.*, 404 Ill. App. 3d 438, 453, 934 N.E.2d 679, 692 (2010). Under Delaware law, for a contractual term to be considered unconscionable and thus unenforceable, it must be "so one-sided as to be oppressive." *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del.1978) (internal quotations omitted). Similarly, under Illinois law, "[a]n unconscionable bargain is one which no reasonable person would make and which no honest person would accept. The term 'unconscionable' encompasses the absence of meaningful choice by one of the parties as well as contract terms which are unreasonably favorable to the other party." *Zubi v. Acceptance Indem. Ins. Co.*, 323 Ill. App. 3d 28, 37, 751 N.E.2d 69, 78 (2001) (internal quotation marks omitted).

In determining whether a contract or certain of its terms are unconscionable, both Illinois and Delaware courts consider various factors, including notice to the parties, their relative bargaining power, and the public policy implications of the contractual terms in dispute. *E.g.*, *Founders Ins. Co. v. Father & Son Home Improvement II, Inc.*, No. 1–10–2759, 2011 WL 2409308 at *4 (Ill. App. May 11, 2011) (considering the presumption that the parties have read and understood the clearly communicated terms within the contract); *All Am. Roofing*, 404 Ill. App. 3d at 453, 934 N.E.2d at 692 (relying on the brevity of the contract, placement of clauses and clear language to establish that the plaintiff had sufficient notice of the contract's terms);

7

*Graham v. State Farm Mut. Ins. Co.*, 565 A.2d 908, 912 (Del. 1989) (considering the relative bargaining power of the parties); *Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1260 (Del. Super.2001) (relying on the express and repetitive language of a contract to establish sufficient notice to all parties of its terms).

In this case, Martinell, a lawyer, was and is a sophisticated party; the terms at issue are clearly written; and the document is of manageable length. All of this indicates that Martinell had notice of the relevant contractual terms. A contractual three-year statute of limitations is not considered unreasonable under either Illinois or Delaware law. *See, e.g., Can. Life Assur. Co. v. Salwan*, 353 Ill. App. 3d 74, 80, 817 N.E.2d 1021, 1027 (2004); *GRT, Inc. v. Marathon GFT Technology, Ltd.*, No. 5571–CS, 2011 WL 2682898 at *2 (Del. Ch. July 11, 2011). There is a reasonable basis for the choice of Delaware law, given Navistar's incorporation in that state. *See* Restatement (Second) of Conflict of Laws § 187(2) (1996); Am. Compl. ¶ 2. Neither clause is unconscionable or otherwise unenforceable under either Delaware or Illinois law.

    c.    **Accrual of Martinell's breach of contract claims**

Martinell argues that even if the choice of law and statute of limitations provisions are enforceable, under Delaware law, his claims did not accrue until the full extent of his damages was ascertainable, which he says did not occur until the unrestricted stock was transferred to his account in March 2009. He also characterizes Navistar's breaches as "continuing." If Martinell is correct, this lawsuit, which he filed in December 2011, would be timely.

Navistar argues that the characterization of the breaches as continuing is

misleading because if a breach occurred, it occurred via the single act of transferring restricted stock to Martinell in December 2007. It contends that the breach of contract claim in Count 1 accrued at that time. Navistar argues that the claim in Count 2 accrued as of May 2008, when Martinell alleges that Navistar failed to transfer marketable stock to him even though the previously imposed restrictions no longer existed.

Under Delaware law, a breach of contract claim accrues at the time the contract is breached, not when the damages are ascertained. *See Worrel v. Farmers Bank of State of Del.*, 420 A.2d 469, 472 (Del. 1980); *Smith v. Mattia*, No. 4498-VCN, 2010 WL 412030 at *3 (Del. Ch. Feb 1, 2010). A breach of contract claim accrues later, when full damages are measurable, only if the breach is continuous. *Bridgestone/Firestone, Inc. v. Cap Gemini America, Inc.*, No. CIV.A. 00C-10-058HDR, 2002 WL 1042089 at *7 (Del. Super. Ct. 2002). The Court highly doubts that these were "continuing" breaches. Martinell's contention in Count 1 is that Navistar owed him a contractual duty to transfer marketable stock on the date he exercised the option yet did not live up to that duty, and his contention is Count 2 is that Navistar promised to remove the restrictions within one year of issuing him the stock but did not do so by the end of that year. These appear to be breaches that occurred at fixed points in time, not ongoing breaches or breaches involving continuing duties. That aside, it does not matter which of the accrual rules governs, for Martinell's damages were ascertainable at the time of the breach: they consist of the difference between the value of the stock at the pertinent time (i.e., what he could have sold it for) and what he paid for it pursuant to the option.

For these reasons, the Court concludes that the claim contained in Count 1

accrued in December 2007, and the claim contained in Count 2 accrued in May 2008. Because Martinell did not file this suit until December 2011, both claims are barred by the contractual three-year limitation term.

**2.     Count 3**

Navistar argues that the unjust enrichment claim that Martinell asserts in Count 3 should be dismissed because the facts alleged fall within the scope of the Supplemental Option Contract, therefore barring recovery under the theory of unjust enrichment.  Martinell argues that Navistar's retention of the benefit he conferred by purchasing the stock was not governed by any valid contract.

Under Delaware law, a party seeking relief under a theory of unjust enrichment must prove, "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law."  *Otto v. Gore*, C.A. Nos. 559, 2011, 582,2011 & 289,2011, 2012 WL 1852075 at *12 (Del. May 22, 2012) (quoting *Metcap Sec. LLC v. Pearl Senior Care, Inc.*, No. 2129-VCN, 2009 WL 513756 at *5 (Del. Ch. Feb. 27, 2009)).  Similarly, under Illinois law, recovery under a theory of unjust enrichment is available only when the (1) plaintiff has no adequate remedy at law, (2) the defendant has unjustly retained a benefit to plaintiff's detriment, and (3) that retention violates fundamental principles of justice, equity, and good conscience.  *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp.*, 131 Ill.2d 145, 160-61, 545 N.E.2d 672, 679 (1989).

As Navistar argues, "[t]he theory of unjust enrichment is based on a contract implied in law and, therefore, does not apply where there is a specific contract that

governs the relationship of the parties." *Perez v. Citicorp Mortgage, Inc.*, 301 Ill. App. 3d 413, 424-25, 703 N.E.2d 518, 526 (1998). *See also, BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, C.A. No. 3099-VCN, at *7 (Del. Ch. Feb. 3, 2009). Martinell's payment of $49,678.94 for 2,131 unrestricted shares – the benefit that he claims Navistar unjustly retained – is expressly contemplated by the Supplemental Option Contract, which is an indisputably valid contract. There is no question that this contract governed the parties' relationship and their expectations regarding Martinell's payment.

For these reasons, the Court concludes that Martinell may not assert an unjust enrichment claim.

## Conclusion

For the reasons stated above, the Court grants Navistar's motion to dismiss [dkt. no. 23] and directs the Clerk to enter judgment dismissing this action with prejudice.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 28, 2012